**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

KELLY MCINTOSH, individually and on behalf of all others similarly situated,

Plaintiff,

v.

TRADER JOE'S COMPANY,

Defendant.

**CASE NO.**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Kelly McIntosh ("Plaintiff") by and through her attorneys, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge, against Defendant Trader Joe's Company ("Trader Joe's" or "Defendant").

## NATURE OF THE ACTION

1. This is a class action lawsuit on behalf of purchasers of Trader Joe's Low Acid Dark French Roast Coffee (alternatively, the "Coffee" or the "Product") in the United States.

2. Low acid coffee is a highly sought-after category of coffee for individuals seeking to consume a regular, caffeinated cup of coffee, but suffer from sensitivities to it. Namely, many individuals experience sensitive stomach issues or heartburn due to the acidity of regular coffee. As a result, low acid coffee commands a significantly higher asking price than regular coffee, and consumers are willing to pay for it.

3. Testing has confirmed that Defendant's Coffee contains less than half the caffeine content as regular coffee, with nearly the same acid content as regular coffee. But Defendant utilizes highly misleading packaging to trick consumers into believing that they are purchasing genuine "low acid" coffee, at low acid prices.

4. As described in further detail below, the label used for Defendant's Low Acid Coffee Product bears several features which make it highly misleading. As a result, consumers have purchased hundreds of thousands of Defendant's Product under the false, but reasonable, impression that they were purchasing regular low acid coffee, when they were not.

5. Defendant has known or should have known about its misleading packaging for at least a year, but has taken no action to fix it. Instead, Defendant continues to rely on deception to reap much greater profits than it would otherwise. If consumers knew the truth about Defendant's Coffee Product, they would not have purchased it or would pay significantly less for it than they did.

## FACTUAL BACKGROUND

### I. The United States Coffee Market

6. The United States coffee market contains three traditional categories of coffee: regular, decaffeinated, and half-caffeinated.

7. Regular coffee is the default category for coffee and consists of coffee that is brewed from beans that have not undergone decaffeination.

8. The United States Department of Agriculture ("USDA") recognizes regular coffee ("Coffee, brewed") as a category of food and has assigned it a Food Code of 92101000.[1]

9. According to the USDA, regular coffee has 96mg of caffeine in one 8-ounce cup.[2]

10. There is no special label required for regular coffee because it is the standard form of coffee.

---

[1] *Nutrient Facts: Coffee, Brewed*, USDA FoodData Central (Oct. 31, 2024), https://fdc.nal.usda.gov/food-details/2710375/nutrients (choose 1 cup from dropdown).

[2] *Id.*

11. Decaffeinated coffee is coffee that is brewed from beans that have gone through a decaffeination process to remove approximately 97% of caffeine.[3]

12. The USDA recognizes decaffeinated coffee ("Coffee, brewed, decaffeinated") as a category of food and has assigned it a Food Code of 92111010.[4]

13. According to the USDA, decaffeinated coffee has 2.4mg of caffeine in one 8-ounce cup.[5]

14. Because it has gone through a decaffeination process, decaf coffee must be labelled as "decaffeinated" or "decaf."

15. Half-caffeinated or "half-caff" coffee is a blend of regular coffee and decaf coffee consisting of 50% of each, unless otherwise labelled.

16. The USDA recognizes half-caff coffee ("Coffee, brewed, blend of regular and decaffeinated") as a category of food and has assigned it a Food Code of 92101500.[6]

17. According to the USDA, half-caff coffee has 48mg of caffeine in one 8-ounce cup.[7]

18. Numerous mainstream coffee brands offer half-caff coffees, including Starbucks, Folgers, Maxwell House, and Green Mountain.

---

[3] *See Decaf Coffee*, Nat'l Coffee Ass'n, https://www.aboutcoffee.org/beans/decaf-coffee/ (last visited Mar. 2, 2026).

[4] *Nutrient Facts: Coffee, Brewed, Decaffeinated*, USDA FoodData Central (Oct. 31, 2024), https://fdc.nal.usda.gov/food-details/2710452/nutrients (choose 1 cup from dropdown).

[5] *Id.*

[6] *Nutrient Facts: Coffee, Brewed, Blend of Regular and Decaffeinated*, USDA FoodData Central (Oct. 31, 2024), https://fdc.nal.usda.gov/food-details/2710376/nutrients (choose 1 cup from dropdown)

[7] *Id.*

19. Amongst these three categories, approximately 90% of American coffee drinkers consume regular (caffeinated) coffee.[8]

20. As a result, there is much lower demand for coffee that is labelled as decaf or as half-caff than there is demand for regular coffee that has not been decaffeinated.

21. Mislabeling of a coffee as belonging to one of these categories when it contains another category of coffee can lead to an FDA recall of the product.

22. On September 6, 2013, the FDA issued a recall for certain 12-count K-Cup packs because "Individual regular (caffeinated) K-Cup packs were packaged inside multiunit Decaffeinated retail boxes."[9]

23. On August 25, 2020, the FDA issued a recall for certain regular coffee being sold as decaffeinated: "Roast ground coffee packed in Newman s Own Organics special decaffeinated packaging contained regular non-organic Coffee."[10]

24. On March 13, 2025, the FDA issued a recall for certain regular coffee being sold as decaffeinated: "Mislabeling. A portion of the production of Our Family Traverse City Ground Coffee was mislabeled as decaffeinate[d]."[11]

---

[8] *See Decaf Coffee*, Nat'l Coffee Ass'n, https://www.aboutcoffee.org/beans/decaf-coffee/ (last visited Mar. 2, 2026) (according to the 2025 National Coffee Data Trends Report published by the National Coffee Association).

[9] *See* Enforcement Report Against Tullys House Blend Coffee, FDA, https://www.accessdata.fda.gov/scripts/ires/index.cfm?Product=121532 (last visited Mar. 2, 2026).

[10] *See* Enforcement Report Against Newman's Special Decaf Medium Roast, FDA, https://www.accessdata.fda.gov/scripts/ires/index.cfm?Product=183332 (last visited Mar. 2, 2026).

[11] *See* Enforcement Report Against Traverse City Cherry Artificially Flavored Decaf Light Roast Ground Coffee, FDA, https://www.accessdata.fda.gov/scripts/ires/index.cfm?Product=213106 (last visited Mar. 2, 2026).

25. As evidenced by these recalls, consumers rely on the packaging of coffee products to determine which category of coffee they are purchasing.

## II. The Market for Low-Acid Coffee

21. Consumers who suffer from health conditions or have acid sensitivity, such as acid reflux or IBS, seek coffee products that have less acidity than regular coffee.

22. Low acid coffee that has had its acidity significantly reduced, independently of its caffeine content and without additives or fillers, is preferred by consumers who are health conscious or who suffer conditions and sensitivities causing them to seek out lower acidity.

23. Low acid coffee is produced through a special roasting process and has a lower concentration of acidic compounds, particularly chlorogenic acids, resulting in a higher pH and less acidic taste compared to regular coffee.[12]

24. For individuals with acid reflux, IBS, or other digestive concerns, low acid coffee offers a way to enjoy coffee without adverse effects. Failure to select low acid coffee, when needed or preferred by a consumer, can result in significant health risks, worsened symptoms (including an exacerbation of acid reflux and heartburn) leading to discomfort and potential complications, prolonged inflammation (for gastritis and ulcer sufferers) or delayed healing due to the irritative properties of the coffee, and the erosion of tooth enamel, increasing tooth sensitivity and susceptibility to cavities.[13]

---

[12] *See, e.g.*, *Can Coffee Cause Heartburn?*, Cleveland Clinic (Feb. 2, 2026) https://health.clevelandclinic.org/does-coffee-cause-acid-reflux; Abdulhakim Sharaf Eddin et al., *Evaluating Acidity Levels in Packaged Coffee to Enhance Product Label Accuracy*, 7 Bioactive Compounds in Health and Disease 145, 147 (2024) ("[H]igher roasting temperatures led to the breakdown of chlorogenic acids (CGA), consequently yielding reduced extraction concentrations and leading to a reduction in acidity levels.").

[13] *See generally* Astrid Nehlig, *Effects of Coffee on the Gastro-Intestinal Tract: A Narrative Review and Literature*, Nutrients, Jan. 2022, https://pmc.ncbi.nlm.nih.gov/articles/PMC8778943/#:~:text=The%20action%20of%20coffee%20on,predispose%20to%20GERD%20%5B25%5D; Barrett White, *Can Your Morning Brew*

25. Due to health benefits, consumers seeking out low acid coffee are willing to pay for it. Low acid coffee routinely commandf double the asking price of regular coffee packages.

26. By way of example, below is a comparison between regular whole bean, dark roast coffee products and Trader Joe's Low Acid Dark French Roast Coffee Product sold by Amazon:

| **PRODUCT** | **PRICE** |
|---|---|
| Trader Joe's Low Acid French Roast Coffee (Dark Roast, Whole Bean) – 13oz | $18.99 |
| Amazon Fresh Organic Fair Trade Sumatra Whole Bean Coffee, Dark Roast – 12oz | $6.99 |
| Community Coffee Signature Blend Whole Bean Coffee, Dark Roast – 12oz | $11.40 |
| Peet's Coffee, Dark Roast Whole Bean Coffee, 100% Arabica Coffee – 18oz | $14.99 |
| Starbucks Whole Coffee Beans, Dark Roast, French Roast – 18oz | $14.91 |

27. The type of coffee a consumer is purchasing is thus material. Consumers are willing to pay significantly more for low acid coffee than regular dark roast coffee. No reasonable consumer would spend two times as much for coffee that offers nothing over its cheaper counterparts.

*Harm Your Teeth*?, Legacy Cmty. Health (Oct. 17, 2023), https://www.legacycommunityhealth.org/newsblog-can-your-morning-brew-harm-your-teeth/.

**III. Trader Joe's Low-Acid Coffee is Labeled to Mislead Consumers**

28. Defendant Trader Joe's Company falsely and/or misleadingly labels its Low Acid Coffee Product as regular coffee ("100% Arabica Whole Bean Coffee") and "Low Acid," when it is neither low acid nor regular (fully caffeinated) coffee:



29. However, Trader Joe's does not reveal to consumers that its Coffee Product is not on par with regular coffee and falsely and misleadingly claims to be genuine low acid coffee.

30. Testing has revealed that these representations on Defendant's "Low Acid" Coffee Product are false and/or misleading.

**A. Caffeine Testing**

31. Testing performed by Cambium Analytica in December 2024 on behalf of one of Trader Joe's competitors reveals that Trader Joe's Low Acid Dark French Roast Coffee has significantly less caffeine content than its own regular coffee alternative.




32. Additionally, the Coffee Product contains a lower caffeine content than many of its competitors' half-caff branded coffee beans. Specifically, the Coffee Product contains 17.8% less caffeine than Folger's half-caff brand and 24.5% less caffeine than Puroast's half-caff brand.

33. As a result of this testing, it is evident that Trader Joe's Low Acid Dark French Roast Coffee has the caffeine characteristics of a half-caff coffee, not a regular coffee.

34. The product labeling for Trader Joe's Low Acid Dark French Roast Coffee does not include any disclosure that the caffeine content has been reduced through the processing of the Coffee.

35. Instead, the front of the label has a large red circle stating "Low Acid," and the back of the label states that only acidity has been impacted by the processing: "Prior to a long, slow roast, the beans are treated to a chemical-free, natural steaming process that removes some of their acidity, but not their flavor."




36. Omitting the correct caffeine content in its Product is likely to mislead reasonable consumers who purchased the Product seeking to consume a genuine low acid coffee, that is, a regular coffee with low acidity.

**B. Acidity Testing**

37. Testing of Trader Joe's Low Acid Dark French Roast Coffee conducted in February 2025, determined that, when prepared in accordance with the label's instructions, it has an average (mean) pH of 5.44.

38. Based on this testing, the Trader Joe's Low Acid Dark French Roast Coffee is marginally less acidic than regular coffee, which has a pH range between 4.8 and 5.4, but it is still acidic relative to a critical pH line of 5.5 recommended by experts.[14]

39. The 5.5 pH threshold has been described in publications of the National Institute of Health as "the critical pH" for dental problems.[15]

40. Similarly, the Journal of the Canadian Dental Association states that "[a]ny acid with a pH below the critical pH of dental enamel (5.5) can dissolve the hydroxyapatite crystals in enamel."[16]

41. In addition to the scientific evidence supporting a 5.5 pH threshold for low acidity, this threshold also corresponds to an acidity that is more than 50% less acidic than regular coffee.

42. If a coffee's acidity has not been reduced below 50% then, as a matter of language, it cannot truthfully be called "low" in acidity because 50% is "medium," at best.

43. By labeling its Coffee as "Low Acid," Defendant misleads consumers into purchasing a product they believe to contain less acid than competing coffee products, when in reality, the difference is marginal and likely insufficient to produce actual health benefits.

---

[14] Abdulhakim Sharaf Eddin et al., *Evaluating Acidity Levels in Packaged Coffee to Enhance Product Label Accuracy*, 7 Bioactive Compounds in Health and Disease 145, 147 (2024) (reviewing low acid coffees in the market).

[15] *See* Sujata Tungare & Arati G. Paranjpe, *Diet and Nutrition to Prevent Dental Problems*, StatPearls [Internet], https://www.ncbi.nlm.nih.gov/books/NBK534248/ (last updated July 2023).

[16] *See* Robert P. Barron, et al., Dental Erosion in Gastroesophageal Reflux Disease, 69 J. Canadian Dental Ass'n 84, 84 (2003), https://www.cda-adc.ca/jcda/vol-69/issue-2/84.pdf.

## IV. Trader Joe's Knowingly Continues to Deceive Consumers

44. Trader Joe's knows and has known since at least February 2025 that its Low Acid Dark French Roast Coffee has less than half the caffeine of regular coffee.

45. Despite this knowledge, Trader Joe's has done nothing to change the label on its Low Acid Dark French Roast Coffee to reveal to the consumer that the coffee's caffeination is equivalent to a half-caff coffee.

46. In fact, instead of providing this basic information to the consumer, Trader Joe's has a company policy of actively deceiving consumers by falsely advising them that its Low Acid Dark French Roast coffee is fully caffeinated.

47. For example, on October 21, 2025, Trader Joe's customer service responded to a customer inquiry about the caffeine in its Low Acid Dark French Roast Coffee and falsely stated: "Our Low Acid French Roast (SKU# 54747) is not decaffeinated. This coffee has the same amount of caffeine as a normal French roast, but it has been processed in a way that reduces the acidity level."

48. This deception is particularly dangerous to consumers who are seeking out low acid coffee due to dietary or health issues and are expecting the caffeination to be that of regular coffee.

49. These consumers are at risk of consuming more of the mislabeled coffee to obtain the expected dose of caffeination leading to the ingestion of more acid.

50. Added to this is the fact that the acidity itself is not "low" because the pH does not exceed the critical threshold as defined in the literature alleged above and is, at best, a "medium" level of acidity compared to regular coffee.

51. Trader Joe's has made these false and/or misleading statements (representing a half-caff coffee as regular low-acid coffee) to capitalize on several consumer trends without making the investment or changes needed to produce a coffee whose acidity has been lowered below the

critical 50% threshold, while concealing the substantially reduced caffeine levels that would result in many consumers not buying it at all.

52. Plaintiff, the Class, and Subclass Members relied to their detriment on Defendant's unclear and misleading representations on its Coffee Product regarding the acidity and caffeine content per container. Plaintiff, Class, and Subclass Members would not have purchased Defendant's Coffee Product—or would not have paid as much as they did to purchase it—had Defendant provided a more accurate picture of the caffeine content and acidity per container. As such, Plaintiff and Class Members paid a price premium for a Product they were led to believe contained less acidity and regular caffeine content per container in comparison to competitor products.

## PARTIES

53. Plaintiff Kelly McIntosh is a resident and domiciliary of New York, New York. Plaintiff purchased several of Defendant's Low Acid Dark French Roast Coffee between February 2025 and February 2026 from Defendant's brick-and-mortar store in Harlem, New York.

54. Prior to purchasing the Product, Plaintiff reviewed the Product's packaging and advertising and saw the Product label's representations that it was "Low Acid" and "100% Arabica Whole Bean Coffee." Plaintiff understood this statement as a representation and warranty to mean that the Product was a regular coffee with lower acidity. Plaintiff relied on Defendant's representations and omissions in purchasing the Coffee Product. Accordingly, these representations and omissions were part of the basis of her bargain, in that Plaintiff would have paid less for the Product or would not have purchased it at all had she known that the Coffee Product she was purchasing from Defendant was in fact stripped of caffeination and only marginally lower in acid in comparison to regular coffee.

55. Plaintiff suffered, and continues to suffer, economic injuries as a direct result of Defendant's material misrepresentations, warranties, and omissions. Reasonable consumers, like Plaintiff, are economically harmed while Defendant sells the Product.

56. Defendant Trader Joe's Company is a corporation organized under the laws of California with its principal place of business in Monrovia, California. Defendant advertises, markets, manufactures, distributes, and sells its Coffee Product throughout New York and the United States. At all relevant times, Defendant has advertised, marketed, manufactured, distributed, and/or sold the Product to consumers in and throughout New York and the United States.

## **JURISDICTION AND VENUE**

57. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative class, and most members of the proposed Class are citizens of different states than Defendant.

58. This Court has personal jurisdiction over Defendant. Defendant does business in New York and has sufficient minimum contacts with this state, including within this District, and/or has otherwise intentionally availed itself of the New York consumer market through the promotion, marketing, and sale of its products to residents within this District and throughout New York. Additionally, Plaintiff purchased Defendant's Coffee Product in this District.

59. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Plaintiff resides in and purchased Defendant's Coffee Product in this District. Moreover,

Defendant distributed, advertised, and sold the Coffee Product to the members of the Class, which is the subject of the present complaint, in this District.

## CLASS REPRESENTATION ALLEGATIONS

60. **Nationwide Class Definition:** Plaintiff McIntosh seeks to represent a Class of similarly situated individuals consisting of all persons in the United States who purchased Defendant's Coffee Product labeled with a representation on the front packaging that it was "Low Acid" and "100% Arabica Whole Bean Coffee" (the "Nationwide Class").

61. **New York Subclass Definition:** Plaintiff McIntosh seeks to represent a Subclass consisting of similarly situated individuals who purchased Defendant's Coffee Product labeled with a representation on the front packaging that it was "Low Acid" and "100% Arabica Whole Bean Coffee" in the State of New York during the relevant statute of limitations period (the "New York Subclass").

62. The Nationwide Class and New York Subclass are collectively referred to as "Classes." Subject to additional information obtained through discovery and further investigation, the above-described Classes may be modified or narrowed as appropriate.

63. **Numerosity (Fed. R. Civ. P. 23(a)(1)):** The members of the Classes are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiff reasonably estimates that there are thousands of members in the Classes. Although the precise number of Class Members is unknown to Plaintiff, the true number of Class Members is known by Defendant and may be determined through discovery. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

64. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2), 23(b)(3)):** A well-defined community of interest exists in the questions of law and fact involved in this case.

Questions of law and fact common to the members of the Classes that predominate over questions that may affect individual members of the Classes include:

(a) whether the marketing, labeling, and advertisements for the Coffee Product was false and misleading;

(b) whether Defendant's conduct was unfair and/or deceptive; and

(c) whether Plaintiff and the Classes sustained damages with respect to the claims asserted, and if so, the proper measure of their damages.

65. **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiff's claims are typical of those of the Classes because Plaintiff, like all members of the Classes, was exposed to Defendant's false and misleading marketing, purchased the Coffee Product in reliance on Defendant's false and misleading representations and omissions, and suffered a loss as a result of that purchase.

66. **Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiff has retained and is represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation. Plaintiff and her counsel are committed to vigorously prosecuting this class action. Moreover, Plaintiff is able to fairly and adequately represent and protect the interests of the Classes. Neither Plaintiff nor her counsel have any interest adverse to, or in conflict with, the interests of the absent members of the Classes. Plaintiff has raised viable common-law and statutory claims of the type reasonably expected to be raised by members of the Classes and will vigorously pursue those claims.

67. **Superiority (Fed. R. Civ. P. 23(b)(3)):** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class Members. Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.

Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
### Violation of New York Gen. Bus. Law § 349
### (On Behalf Of The New York Subclass)

68. Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this Complaint.

69. Plaintiff brings this claim individually and on behalf of the members of the New York Subclass against Defendant.

70. By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by making false representations on the label of the Coffee.

71. The foregoing deceptive acts and practices were directed at consumers.

72. Defendant has violated, and continues to violate, § 349 of the New York General Business Law ("GBL"), which makes deceptive acts and practices unlawful. As a direct and proximate result of Defendant's violation of § 349, Plaintiff and other members of the New York Subclass have suffered damages in an amount to be determined at trial.

73. Defendant committed deceptive acts and practices by employing false, misleading, and deceptive representations and/or omissions about the acid and caffeine content of its Coffee

Product to mislead consumers into believing the Product is superior to other regular coffee products because it contains lower acidity.

74. Plaintiff has standing to pursue this claim because she has suffered an injury-in-fact and has lost money or property as a result of Defendant's deceptive acts and practices. Specifically, Plaintiff purchased the Coffee Product for personal use. In doing so, Plaintiff relied upon Defendant's false, misleading, and deceptive representations and omissions that the Coffee Product contained lower acid and standard caffeine content in comparison to regular coffee products. Plaintiff spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's advertising claims.

75. Defendant's deceptive acts and practices were directed at consumers, and Defendant's labeling induced Plaintiff to buy the Coffee Product.

76. Defendant packaged the Coffee Product with labeling containing misleading representations and omissions willfully, wantonly, and with reckless disregard for the truth.

77. Defendant's deceptive acts and practices are misleading in a material way because, as alleged above and herein, they violate consumers' reasonable expectations. By falsely representing that the Coffee Product is "100% Arabica Whole Bean Coffee" without disclaiming that the Product contains low caffeine content, Defendant proves that the caffeine content in coffee products is material to consumers. Additionally, by falsely representing that the Coffee Product is "Low Acid," despite the acid content being substantially similar to other competitor coffee products and below the critical pH line of 5.5, Defendant proves that the acid content in coffee products is material to consumers. If Defendant had advertised its Coffee Product truthfully and in a non-misleading fashion, Plaintiff and other New York Subclass Members would not have purchased the Coffee Product or would not have paid as much as they did for them.

78. Plaintiff and the New York Subclass members have been injured by their purchase of the Coffee Product, which were worth less than what they bargained and/or paid for, and which they selected over other products that may have been truthfully marketed.

79. Plaintiff and New York Subclass members suffered ascertainable loss as a direct and proximate result of Defendant's GBL violations in that: (i) they would not have purchased the Coffee Product had they known the truth; and (ii) they overpaid for the Coffee Product on account of the misrepresentations and omissions, as described herein. As a result, Plaintiff and New York Subclass members have been damaged in an amount to be determined at trial.

80. On behalf of themselves and other members of the New York Subclass, Plaintiff seeks to enjoin Defendant's unlawful acts and practices described herein, to recover actual damages or $50, whichever is greater, reasonable attorney's fees and costs, and any other just and proper relief available under GBL § 349.

## COUNT II
### False Advertising, New York Gen. Bus. Law § 350
### (On Behalf Of The New York Subclass)

81. Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this Complaint.

82. Plaintiff brings this claim individually and on behalf of the members of the Proposed New York Subclass against Defendant.

83. GBL § 350 provides: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service is hereby declared unlawful." GBL § 350-a defines "false advertising," in relevant part, as "advertising, including labeling, of a commodity . . . if advertising is misleading in a material respect."

84. Plaintiff and the members of the New York Subclass are consumers who purchased Defendant's Coffee Product in New York.

85. As a seller of goods to the consuming public, Defendant is engaged in the conduct of business, trade, or commerce within the intended ambit of § 350.

86. When determining whether advertising is misleading, GBL § 350-a requires not only taking into account "representations made by statement . . . but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions prescribed in said advertisement, or <u>under such conditions as are customary or usual</u>" (emphasis added).

87. As alleged above, Defendant engaged in a campaign of false advertising with regard to the acidity and caffeine content of its Coffee Product to mislead consumers into believing the Coffee Product they purchased would contain lower acid and similar caffeine content in comparison to other competing regular coffee products.

88. Defendant's labeling and advertisement of the Coffee Product was false and misleading in a material way. Specifically, Defendant advertised the Product as "Low Acid" and "100% Arabica Whole Bean Coffee" that puts its beans through a natural steaming process which "removes some of their acidity, but not their flavor." In reality, the Coffee Product strips the Coffee of its caffeination without substantially lowering the acid content.

89. Plaintiff understood the representations on Defendant's label to mean that Defendant's Coffee was genuine low acid coffee, that is, regular (caffeinated) coffee with low acidity.

90. The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

91. This misrepresentation has resulted in consumer injury or harm to the public interest.

92. As a result of this misrepresentation, Plaintiff and members of the New York Subclass have suffered economic injury because (a) they would not have purchased the Coffee if they had known that the representation made on Defendant's Products' labels were false, and (b) they overpaid for the Coffee on account of the misrepresentation.

93. On behalf of herself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs and any other just and proper relief available under § 350 of the GBL.

**COUNT III**
**Fraud**
**(On Behalf Of The Classes)**

94. Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

95. Plaintiff brings this claim individually and on behalf of the members of the proposed Class and New York Subclass against Defendant.

96. As discussed above, Defendant misrepresented on its Coffee Product's packaging that the Coffee is genuine "Low Acid" coffee. Specifically, Defendant's label states on the front that it is "100% Arabica Whole Bean Coffee" and bears a large red circle stating it is "Low Acid." The back of the label states that only acidity has been impacted by the processing: "Prior to a long, slow roast, the beans are treated to a chemical-free, natural steaming process that removes some of their acidity, but not their flavor." Defendant does not disclose anywhere on the packaging that its Coffee contains less caffeine than regular coffee.

97. The false and misleading representations and omissions were made with knowledge of their falsehood. Defendant has known since at least February 2025 that its Dark French Roast Low Acid Coffee has less than half the caffeine of regular coffee because it was notified of this in

a lawsuit filed under the Lanham Act in the Southern District of Florida. *See Puroast Coffee Company, Inc. v. Trader Joe's Company*, No. 1:25-CV-20696 (S.D. Fl. Feb. 14, 2025).

98. Defendant is aware how Low Acid Coffee is perceived by consumers because its Low Acid Dark French Roast Coffee has been previously sold in both regular and decaf forms.

99. The false and misleading representations and omissions were made by Defendant, upon which Plaintiff and members of the proposed Class and New York Subclass reasonably and justifiably relied, and were intended to induce and actually induced Plaintiff and members of the proposed Classes to purchase the Coffee.

100. The fraudulent actions of Defendant caused damage to Plaintiff and members of the proposed Class and New York Subclass, who are entitled to damages and other legal and equitable relief as a result.

**COUNT IV**

**Breach of Express Warranty**
**(On Behalf Of The Classes)**

101. Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

102. Plaintiff brings this claim individually and on behalf of the members of the proposed Class and New York Subclass against Defendant.

103. In connection with the sale of the Coffee, Defendant, as the producer, marketer, distributor, and/or seller issued written warranties by representing that the Coffee is "Low Acid" "100% Arabica Whole Bean Coffee."

104. In fact, the Coffee does not conform to the above-referenced representations because the Coffee sold by Defendant is not genuine low acid coffee at all. Instead, the Coffee is

stripped of its caffeine content and the pH does not exceed the critical threshold as defined in the literature alleged above and is, at best, a "medium" level of acidity compared to regular coffee.

105. Plaintiff and members of the proposed Class and the New York Subclass were injured as a direct and proximate result of the Defendant's breach because (a) they would have not purchased the Coffee if they had known that the representation made on Defendant's Product's label was false, and (b) they overpaid for the Coffee on account of the misrepresentation.

106. Prior to filing the initial complaint in this action, Defendant was served via FedEx Overnight with a pre-suit notice letter on behalf of Plaintiffs that complied in all respects with U.C.C. §§ 2-313 and 2-607. A true and correct copy of this letter is attached hereto as **Exhibit A**.

## RELIEF DEMANDED

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as the representative of the Classes and naming Plaintiff's attorneys as Class Counsel to represent the Classes;

(b) For an order declaring Defendant's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(d) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest in all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For an order awarding Plaintiff and the Classes their reasonable attorney's fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: April 28, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**
By: *<u>/s/ Philip L. Fraietta</u>*

Philip L. Fraietta
Matthew A. Girardi
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
Email: pfraietta@bursor.com
mgirardi@bursor.com

*Attorneys for Plaintiff*